# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERNARDO COLES, | ) | |
| | ) | Civil Action No. 12 - 238 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| LOUIS FOLINO, *et al*., | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION

Bernardo Coles ("Petitioner") has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges the April 10, 2009 decision by the Pennsylvania Board of Probation and Parole (the "Board") to deny him parole. For the reasons set forth below, the petition is denied and a certificate of appealability is denied.

**A.** **Relevant Background[1]**

On October 12, 1977, Petitioner was arrested in Richmond, Virginia and subsequently convicted of Possession of Marijuana and sentenced to 30 days incarceration, suspended for 3 years.

On January 28, 1978, Petitioner was arrested for Use of Firearm in Felony Robbery and subsequently convicted and sentenced to 12 years incarceration in the Commonwealth of Virginia.

---

[1] The following background is taken from the Declaration of Kimberly Barkley (Resp. Exh. A, ECF No. 20-1 at pp.2-6), the Board Secretary in charge of maintaining the Board's records.

On July 14, 1978, Petitioner was arrested for Robbery and Use of a Firearm and subsequently convicted and sentenced to 12 to 1 year terms of incarceration in the Commonwealth of Virginia.

Petitioner was released from incarceration in 1981.

On November 29, 1983, a felony arrest warrant was issued for Petitioner in Richmond, Virginia. This warrant is currently lodged as a detainer against Petitioner.

On June 6, 1984, a criminal complaint was filed against Petitioner in Berks County, Pennsylvania.

On August 30, 1984, an information was filed in Berks County, Pennsylvania, charging Petitioner with attempt to commit murder, firearms not to be carried without a license, four counts of robbery, aggravated assault, simple assault, theft by unlawful taking, receiving stolen property, crimes committed with a firearm, and criminal conspiracy.

On March 8, 1988, a felony arrest warrant was issued for Petitioner in Henrico, Virginia.

On March 31, 1988, Petitioner was arrested for flight to avoid apprehension in Florida.

On October 7, 1988, Petitioner was convicted by a jury in Berks County, Pennsylvania of attempt to commit murder, four counts of robbery, aggravated assault, simple assault, theft by unlawful taking, receiving stolen property, crimes committed with a firearm, and criminal conspiracy to commit each of these offenses.

On November 7, 1988, Petitioner was sentenced to an effective term of 17.5 to 35 years incarceration in Berks County, Pennsylvania.

Petitioner's controlling maximum sentence date on the Berks County sentence is March 30, 2023.

Petitioner was received into custody at the Pennsylvania Department of Corrections on November 10, 1988, and housed at the State Correctional Institution at Graterford.

Petitioner was transferred to the custody of the Commonwealth of Virginia on November 27, 1989, to address outstanding criminal charges.

On August 15, 1990, in the Circuit Court of Henrico County, Virginia, Petitioner was sentenced to 204 years incarceration after being convicted of robbery, abduction, and use of a firearm in the commission of a felony. The sentence is lodged as a detainer against Petitioner.

Petitioner was returned to the custody of the Pennsylvania Department of Corrections on August 21, 1990. He remained at the State Correctional Institution at Graterford until October 6, 1994, when he was transferred to the State Correctional Institution at Greene after he assaulted a corrections officer. He remained at the State Correctional Institution at Greene until March 27, 1996, when he was transferred to the custody of the Commonwealth of Virginia, at his request, pursuant to the Interstate Corrections Compact.

On March 29, 1996, Petitioner, while in the custody of the Virginia Department of Corrections, was charged with attempted homicide and subsequently convicted and sentenced to 35 years incarceration.

Per his request, Petitioner was returned to the State Correctional Institution at Greene on April 10, 2003.

Petitioner was refused parole on August 18, 2005; January 19, 2006; February 7, 2008; April 10, 2009; and May 27, 2011.

**B. Habeas Petition**

In the instant petition, Petitioner challenges the Board's April 10, 2009 decision to deny him parole. This case is governed by the federal habeas statute applicable to state prisoners, 28

U.S.C. § 2254. Under this statute, habeas relief is only available on the grounds that he is in custody in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). Petitioner claims that the Board's decision violated the Ex Post Facto, Equal Protection and Due Process Clauses of the United States Constitution.

Respondents have filed an Answer in which they argue that the petition is moot because Petitioner was reviewed and denied parole again on May 27, 2011, after the filing of this petition. (ECF No. 20.) Petitioner filed a Reply to their Answer. (ECF No. 30.)

**C. Discussion**

1. The Petition is Moot

Petitioner is challenging the Board's April 10, 2009 decision to deny him parole. However, after he filed the instant petition with this Court, Petitioner was again reviewed for and denied parole on May 27, 2011. Therefore, Respondents are correct that the habeas petition should be denied because any challenge relating to the Board's April 10, 2009 denial of parole is now moot.

The mootness doctrine prohibits federal courts from deciding a case if there is no longer any controversy between the parties about the issues in that case, i.e., any decision will no longer affect the parties. *See* DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) (citing North Carolina v. Rice, 404 U.S. 244, 246 (1971)); U.S. CONST. Art. III. Generally, a challenge to an earlier parole decision is rendered moot by a subsequent parole decision. *See* Wolfe v. Diugielmo, No. 06-5261, 2008 WL 544645, at *6 (E.D. Pa. Feb. 28, 2008) (where appropriate relief for parole denials would be a new hearing, challenge to prior denial is moot when petitioner has received a new hearing). Because the appropriate remedy in this case would be a new hearing before the Board, and because Petitioner has had a new hearing since the time he filed this petition, any

claims challenging the denial of parole prior to May 27, 2011 are moot. *See* Wolfe, 2008 WL 544645, at *6 (citing cases).

2. The Petition is Denied on the Merits

Alternatively, Petitioner's challenge to the Board's April 9, 2010 decision fails on the merits.

a. Ex Post Facto

Petitioner claims that the Board violated the Ex Post Facto Clause[2] of the Constitution by applying standards enacted by the December 1996 amendments to the Pennsylvania Parole Act, which placed increased weight on public safety. The 1996 amended statute requires that the Parole Board "first and foremost seek to protect the safety of the public." Pa. Stat. Ann, tit. 61 § 331.1 (2006). Previously, the parole statute had emphasized rehabilitation and the restoration of prisoners to social and economic life. *See* Pa. Stat. Ann., tit. 61 § 331.1 (pre-1996 version).

Petitioner claims that the Board's denial(s) of parole violated the Ex Post Facto Clause in that the Board made the protection of the public its pre-eminent consideration in denying him parole. In this respect, he relies upon the analysis in Mickens-Thomas v. Vaughn, 321 F.3d 374 (3d Cir. 2003) ("Mickens-Thomas I"), *cert. denied sub. nom.* Gillis v. Holland, 51 U.S. 875

---

[2] The Ex Post Facto Clause of the United States Constitution applies to a statutory or policy change that "alters the definition of criminal conduct or increases the penalty by which a crime is punishable." California Dep't of Corrections v. Morales, 514 U.S. 499, 506 n.3 (1995). A new law or policy violates the Ex Post Facto Clause (1) when it is retrospective, i.e., when it "appl[ies] to events occurring before its enactment," and (2) when it "disadvantage[s] the offender affected by it." Weaver v. Graham, 450 U.S. 24, 29 (1981); *see* Coady v. Vaughn, 251 F.3d 480, 488 (3d Cir. 2001).

"[A]n offender, prior to his conviction and sentencing, is entitled to know not only his maximum possible punishment, but also his or her chances of receiving early release since this too is a relevant factor in the plea bargaining calculus. An adverse change in one's prospects for release disadvantages a prisoner just as surely as an upward in the minimum duration of sentence." Mickens-Thomas v. Vaughn, 321 F.3d 374, 392 (3d Cir. 2003). "Therefore, a sentence that contained the right to parole consideration would give rise to a constitutional expectation that the parole guidelines extant at the time of the crime would be applied." Id. (citing Garner v. Jones, 529 U.S. 244, 250 (2000)).

(2003). In Petitioner's view, the Board improperly relied on the "new" factors introduced by the 1996 amendment to Pennsylvania's parole statute.

The Board's April 10, 2009, decision cites the following reasons for denying Petitioner parole: "Your need to participate in and complete additional institutional programs."; "Your risk and needs assessment indicating your level of risk to the community."; "Your failure to demonstrate motivation for success."; "Your minimization of the nature and circumstances of the offense(s) committed."; "Your refusal to accept responsibility for the offense(s) committed."; and, "The existence of a pending state other detainer sentence filed against you." (ECF No. 20-1 at p.71.) Petitioner argues that, prior to the 1996 amendment to the Pennsylvania parole statute his release would have been more likely. He argues that the failure to follow the pre-1996 guidelines for considering his parole application is fatal to the Board's decision.

In Parker v. Kelchner, 429 F.3d 58, 64 (3d Cir. 2005), the Third Circuit Court of Appeals provided an overview of the evolution of ex post facto claims such as Petitioner's. In Parker, the court stated:

> The Pennsylvania Supreme Court first addressed the ex post facto implications of the changes to the parole laws in Winklespecht v. Pennsylvania Board of Probation and Parole, 813 A.2d 688, 691 (Pa. 2002). In that case, Justice Eakin responded that the 1996 Amendments did not create a new offense, increase the penalty for an existing offense, or create a substantial risk that parole would be denied more frequently, and therefore it did not violate the Ex Post Facto Clause. Id. at 691-92. Winklespecht, however, featured the opinions of four different judges and no clear majority opinion emerged.
>
> Following Winklespecht, we weighed in on the Ex Post Facto question in Mickens-Thomas v. Vaughn, 321 F.3d at 392. In Mickens-Thomas, we concluded that the Parole Board interpreted the amendments to the parole statue in a way that fundamentally altered the parole application reviewing process by placing primary importance on public safety as a consideration of whether to grant parole. Id. at 384-85. The Pennsylvania Supreme Court responded in Finnegan v. Pennsylvania Board of Probation and Parole, 838 A.2d 684, 690 (Pa. 2003), recognizing our decision in Mickens-Thomas, but also noting its limited

>    application. It then took the opportunity to "reiterate that the 1996 revision of § 331.1 of the Parole Act does not violate the ex post facto clause when applied to a prisoner convicted prior to the revision." Id.
>
>    Shortly thereafter, a plurality of the Pennsylvania Supreme Court took the opportunity in Hall v. Pennsylvania Board of Probation and Parole, 851 A.2d 859, 865 (Pa. 2004), to expressly disagree with our decision in Mickens-Thomas. Hall, however, offered no further Ex Post Fact analysis.
>
>    Most recently, the Pennsylvania Supreme Court revisited the 1996 parole amendments in Cimaszewski v. Board of Probation and Parole, 868 A.2d 416, 427 (Pa. 2005). Although again fragmented, a clear majority of the court explicitly rejected Finnegan and held that "under Garner [v. Jones, 529 U.S. 244 (2000)] and [California Dept. of Corrections v.] Morales, [514 U.S. 499 (1995),] the 1996 amendments may be shown to violate the ex post facto clause if an inmate is able to demonstrate that the 1996 amendment, as applied to him, creates a significant risk of prolonging his incarceration." Id. In our recent decision in Richardson v. Pennsylvania Board of Probation and Parole, 423 F.3d 282, 2005 WL 2155505 (3d Cir. Sept. 8, 2005), we recognized that the Cimaszewski decision had squarely answered in the affirmative that the 1996 Amendments had changed the substantive criteria for parole in Pennsylvania and that **a petitioner who could demonstrate individual disadvantage from retroactive application of the 1996 Amendments could prevail on an ex post facto claim**. Id. at *8.

Parker, 429 F.3d at 64 (emphasis added).

As this synopsis of Mickens-Thomas I and subsequent state and federal case law establishes, an ex post facto claim premised upon the "changes" engendered by the 1996 amendment of Pennsylvania's parole statute requires that a petitioner establish "individual disadvantage." Therefore, Petitioner must show that the 1996 amendments, as applied to him, created a significant risk that his incarceration would be prolonged.

Petitioner has not established "individual disadvantage." First, the reasons set forth by the Board for denying him parole on April 10, 2009 (and on May 27, 2011) are entirely in line with the pre-1996 requirements of the Parole Act and do not indicate that the Board prioritized public safety concerns over all other factors. *See*, *e.g*, Mickens-Thomas I, 321 F.3d at 378. In fact, the Board did not make any indication of public safety at all in its reasons for denying

7

Petitioner parole on April 9, 2009, and Petitioner's pending state detainer to serve another (very lengthy, perhaps indefinite) sentence upon the expiration of the one for which he is currently incarcerated, indicates that it is quite improbable the Board put unnecessary weight on the public safety factor.[3] Thus, unlike the Board's decision in <u>Mickens-Thomas I</u>, there is no indication on this record that the 1996 amendment to the Pennsylvania Parole Act had any effect on the decision to deny Petitioner parole in any of his parole hearings.

Petitioner makes several other arguments in support of his alleged Ex Post Facto Clause violation claim. For example, he states that pre-1996 guidelines made no distinction between violent and non-violent offenders, but now that public safety is the Board's priority, an overwhelming majority of inmates convicted of violent crimes before 1996 are "routinely denied" parole after completion of their minimum sentences.[4] In support, he states that the pre-1996 guidelines provided that the Board give weight to factors such as educational accomplishments, job training, and therapy programs, and had they done that in his case then he

---

[3] Unlike the Board's Notice of Decision on April 9, 2010, the Board's Notice of Decisions on August 18, 2005, January 19, 2006, and February 7, 2008, stated that "the interests of the Commonwealth [would] be injured" if Petitioner were to be paroled. However, given that Petitioner has had new parole hearings since then, any challenge to these parole hearings are now moot. Nonetheless, even in these hearings, it is clear that the Board did not put unnecessary weight on the issue of public safety. The Notice of Board Decisions for these hearings all indicate that Petitioner was denied parole based on his interview, because of his minimization of the nature and circumstances of his offense, and because he refused to accept responsibility for his actions; all reasons also stated in the Board's Notice of Decision on April 9, 2010.
.
[4] Pursuant to the Operating Guidelines, Act 1941, Aug. 6, P.L. 861, § 1, the Parole Board was required to give weight to a variety of factors, including Department of Corrections recommendations, the seriousness of the offense, the length of sentence, institutional adjustment, the strength of a parole plan, testimony from victims, opinions of the sentencing judge, job training, treatment and therapy programs and participation in educational programs. 61 P.S. § 331.19; <u>Mickens-Thomas</u>, 321 F.3d at 386. Pre-1996 a prisoner could be denied parole because of public safety concerns only if those concerns together with other relevant factors outweighed, by a preponderance, the liberty interests of the inmate. Moreover, the Board had to weight all factors, militating for and against parole, and make its decision on the totality of the factors pertinent to parole, and give appropriate weight to the interests of the inmate. Heavy application of one factor could not have been the basis of granting or rejecting parole. <u>Id</u>. at 385, 86.

would have been paroled.[5] But, according to Petitioner, because the Board continues to apply the 1996 amendment, and prioritize public safety over all other factors, violent offenders that possess these skills are denied parole nonetheless. Thus, as long as the Board continues to put unnecessary weight on the status of the inmate as a violent offender, an unchanging circumstance, then parole will never be granted. This is evidenced by the dramatic decrease in number of pre-1996 sentenced inmates that have been granted parole since the enactment of the 1996 amendment.

Despite the effect that the 1996 amendment had on the number of inmates paroled in Pennsylvania who were sentenced prior to 996, Petitioner conveniently ignores the reasons the Board has routinely denied **him** parole. Every time Petitioner has been up for parole, the Board has explicitly stated that it has "considered all matters required pursuant to the Parole Act" and listed its reasons for its denial. Contrary to Petitioner's aforementioned argument, the Board has never rejected him parole based on the seriousness of his offense(s). Instead, it has always been Petitioner's "**minimization** of the nature and circumstances of the offense[s] committed[,]" his lack of remorse, and his refusal to accept responsibility. (ECF No. 20-1, Notice of Board Decision dated April 10, 2009) (emphasis added). The Board considered these factors, together with others, including Petitioner's history as a multi-state offender and the existence of a pending state detainer sentence filed against him, and this Court finds that they are in line with the pre-1996 requirements of the Parole Act. Consequently, Petitioner's ex post facto claim fails.

    b. Equal Protection

---

[5] Although the Notice of Board Decision notes that Petitioner was denied parole because, *inter alia*, of his need to participate in and complete additional institutional programs and demonstrate a motivation for success, Petitioner maintains that he has completed every treatment program, with perfect attendance, has received educational accomplishments and has job training in carpentry, custodial maintenance and tailoring.

Petitioner, an African American, claims that the Board's decision to deny him parole was based on his race and because he is a violent offender. Thus, he alleges that he was denied equal protection. The Fourteenth Amendment states that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. IX. Put simply, the Equal Protection Clause requires that "all persons similarly circumstanced shall be treated alike." F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920). The Supreme Court has explained that "'[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 445 (1923) (quoting Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352 (1918)). Thus, an equal protection claim arises when a person alleges that the state has treated him differently from others similarly situated. Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003).

Where no suspect classification, such as race, alienage, national origin, gender or religion, is used and no constitutional right is impinged, a difference in treatment is permissible if rationally related to a legitimate state interest. Rechenski v. Williams, 622 F.3d 315, 337 (3d. Cir. 2000) (citing Doe v. Pennsylvania Bd. of Prob. and Parole, 513 F.3d 95, 107 (3d Cir. 2008). If the challenged state action involves a "suspect" classification, a strict scrutiny test must be applied, under which a challenged state action will be upheld only if it advances a compelling state interest and is narrowly tailored to meet that interest. Id.; *see also* Donatelli v. Mitchell, 2 F.3d 508, 513 (3d Cir. 1993). Classifications that are based on race or that infringe on fundamental constitutional rights are presumptively invalid and will not often be justified by a legitimate state interest. Donatelli, 2 F.3d at 513.

According to Petitioner, statistics show that when all things are equal – i.e., type of crime, criminal history, education, prison record, length of maximum and minimum sentence – African American prisoners are "disproportionately" required to serve more time than similarly situated Caucasian prisoners. He has submitted extensive documentation and statistical reports to prove his theory of a "disturbing pattern of systemic discrimination by the Board in assessing the parole suitability of African Americans." He also avers that three Caucasian inmates (which he identifies by name) were paroled during the same time frame in which he was thrice denied parole, despite the fact that they were, according to Petitioner, "similarly situated."

Petitioner's evidence does not demonstrate that the Board discriminated against him because he is an African American or violent offender. In fact, any variations in its treatment and parole decisions – which Petitioner cites to as evidence of racial bias – are actually the natural result of the Board's individualized review process, which focuses on the likelihood of an inmate re-offending if released on parole. While Petitioner may disagree, each inmate presents a unique set of characteristics relevant to this inquiry, including among other things, the inmate's criminal history, participation in therapy, acceptance of responsibility, prison behavior, and support system outside prison. Because there are so many variables, it is impossible to identify two inmates who are truly "similarly situated" as to require identical treatment under the Constitution. *See* Granguillhome v. Utah Bd. of Pardons, No. 204-CV-260, 2006 WL 3672901, at *9 (D. Utah Dec. 8, 2006). In this case, Petitioner was denied parole for facially valid reasons, which are stated in the Board's Notice of Decision. He has not demonstrated an equal protection violation.

    c.   Due Process

Petitioner claims that Respondents violated the Due Process Clause of the Fourteenth Amendment because the Board "arbitrarily and capriciously" denies parole to inmates serving sentences for violent offenses on grounds "wholly irrelevant to the achievement of the state's 'stated objective' for implementing the policy." (ECF No. 1 at p.8, Petition for Writ of Habeas Corpus.)

The Fourteenth Amendment provides that the State may not "deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV. An examination of a procedural due process claim under the Fourteenth Amendment proceeds in two steps. *See* Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972). First, the court must determine whether there exists a liberty or property interest which has been interfered with by the state. Kentucky Dept. of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (citing Board of Regents, 408 U.S. at 571). Second, and if and only if a petitioner establishes the existence of a protected interest, the court must examine whether the procedures attendant upon that deprivation were constitutionally sufficient. Id. (citing Hewitt v. Helms, 459 U.S. 460, 472 (1983)).

Petitioner cannot meet either criteria here because there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979). Thus, absent the creation of a liberty interest in parole, a state's decision to deny parole does not create any procedural due process protections. Both the federal and Pennsylvania state courts have held that parole is not a constitutionally protected liberty interest under Pennsylvania law. Burkett v. Love, 89 F.3d 135, 139 (3d Cir. 1996); Rogers v. Pennsylvania Bd. of Prob. & Parole, 724 A.2d 319, 323 (Pa. 1999). *See also* Newman v. Beard, 617 F.3d 775, 783 (3d Cir. 2010). Because

Petitioner cannot establish that he possesses a liberty interest in parole, he has not demonstrated a violation of a protected constitutional right which would allow him to present a procedural due process claim. Accordingly, the Board's decision did not violate his right to procedural due process.

With regards to substantive due process, the Third Circuit Court of Appeal has held that "even if a state statute does not give rise to a liberty interest in parole release under Greenholtz, once a statute institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." Block v. Potter, 631 F.2d 233, 236 (3d Cir. 1980). *See also* Newman, 617 F.3d at 782. The Supreme Court has also held that "although a person may have no 'right' to a valuable government benefit, and may be denied it for any number of reasons, 'there are some reasons upon which the government may not rely.'" Burkett, 89 F.3d at 139 (citing Perry v. Sindermann, 408 U.S. 593, 597 (1972)). Under substantive due process, as the term has been construed by the courts, a state may not deny parole on constitutionally impermissible grounds, such as race or in retaliation for exercising constitutional rights. Id. at 140. In addition a state may not base a parole decision on factors bearing no rational relationship to the interests of the Commonwealth. Block, 631 F.2d at 237.

Importantly, the Third Circuit Court of Appeal has stressed that a substantive due process claim based upon alleged arbitrary and capricious action is not easily mounted. Hunterson v. DiSabata, 308 F.3d 236, 246-47 (3d Cir. 2002). That is because the relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but rather, something more egregious, which the Third Circuit Court has termed at time "conscience shocking." Hunterson, 308 F.3d at 246-47. It has made clear

that "only the most egregious conduct will be considered arbitrary in the constitutional sense." Id. at 247-48. *See also* Newman, 617 F.3d at 782 ("Conduct can violate substantive due process if it shocks the conscience, which encompasses only the most egregious official conduct.") (internal quotations and citations omitted). It also has stated: "[F]ederal courts are not authorized to second-guess parole boards and the requirements of substantive due process are met if there is *some basis* for the challenged decision." Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir. 2001) (emphasis added). Newman, 617 F.3d at 782 ("The conduct must be intended to injure in some way unjustifiable by any government interest[.]") (internal quotations and citations omitted).

Petitioner has not demonstrated that the Board's decision lacked "some basis." As reflected in its April 10, 2009 decision, he was denied parole because, based on an interview, a review of his file, and consideration of matters set forth in the relevant state statute, the Board determined that Petitioner needed to participate in and complete more programs, failed to demonstrate a motivation for success, minimized the nature and circumstances of his crime, refused to accept responsibility and lacked remorse for his offense(s), and had a pending state detainer sentence filed against him. Although Petitioner disagrees with the Board's assessment of him, he has failed to direct the Court to any factor relied upon by the Board that could be described as "conscience shocking." Accordingly, there can be no finding that he is in custody in violation of his substantive due process rights.

### D. Certificate of Appealability

Section 102 of the AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Where a district court has

rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, the Court will not issue a certificate of appealability.

### E. Conclusion

For the foregoing reasons, the petition for writ of habeas corpus (ECF No. 1) will be denied and a certificate of appealability will be denied. A separate Order will issue.

Dated: November 4, 2014

_____
Lisa Pupo Lenihan
United States Magistrate Judge


cc: Bernardo Coles
    AS-2079
    SCI Greene
    175 Progress Drive
    Waynesburg, PA 15370
    *Via First Class Mail*

    Counsel of Record
    *Via CM/ECF Electronic Mail*